# Exhibit A

```
1              UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF NEW YORK

3

4

5   IN RE: FISHER-PRICE ROCK 'N     )

    PLAY SLEEPER MARKETING,         )

6   SALES PRACTICES, AND            )   MDL No. 1:19-md-2903

    PRODUCTS LIABILITY              )

7   LITIGATION                      )

                                    )

8   _____)

9

10

11        VIDEOTAPED DEPOSITION VIA VIDEOCONFERENCE OF

12                    COLIN B. WEIR

13                 Tisbury, Massachusetts

14                Thursday, March 11, 2021

15

16

17

18

19

20

21  Reported by:

    Lynda L. Fenn, CSR, RPR

22  CSR No. 12566

    JOB No. 4485309

23

24

25

                                              Page 1
```

```
 1              UNITED STATES DISTRICT COURT

 2              WESTERN DISTRICT OF NEW YORK

 3

 4

 5   IN RE: FISHER-PRICE ROCK 'N    )

     PLAY SLEEPER MARKETING,        )

 6   SALES PRACTICES, AND           )   MDL No. 1:19-md-2903

     PRODUCTS LIABILITY             )

 7   LITIGATION                     )

                                    )

 8   _____ )

 9

10

11           VIDEOTAPED DEPOSITION VIA VIDEOCONFERENCE

12        of COLIN B. WEIR, taken on behalf of

13        Defendants, Tisbury, Massachusetts, at 11:06

14        a.m. and ending at 7:24 p.m., Thursday, March

15        11, 2021, reported by Lynda L. Fenn,

16        CSR No. 12566, Certified Shorthand Reporter

17        within and for the State of California,

18        pursuant to notice.

19

20

21

22

23

24

25
```

                                                        Page  2

```
 1    restriction, I would have to give that some thought.      10:30:40
 2    There are certainly a few instances, but if you are       10:30:44
 3    asking when was I the primary person responsible, it      10:30:47
 4    would be dozens at this point.                            10:30:52
 5         Q    In litigation -- let me narrow it a little      10:30:58
 6    bit to litigation.                                        10:31:01
 7              In the litigation context how many times        10:31:02
 8    have you, yourself, designed a conjoint survey, as        10:31:04
 9    opposed to another expert that may have been retained     10:31:08
10    in the action to do that work.                            10:31:12
11         A    Maybe three or four times.                      10:31:14
12         Q    In what cases were those three or four          10:31:18
13    times that you designed the conjoint survey?              10:31:21
14         A    There was a case involving Craftsman, a         10:31:24
15    case involving New Balance, a case involving -- I         10:31:31
16    think it was maybe Maytag.  There's the instant           10:31:40
17    matter.  I guess that gets us to four.                    10:31:44
18              Well, there was one more.  There's a case       10:31:49
19    involving Walmart.                                        10:31:52
20              There may be one or two others, but that's      10:31:57
21    what's coming to mind as I sit here.                      10:31:59
22         Q    Are any of those matters listed on your CV?     10:32:03
23         A    I know at least some of them will be within     10:32:09
24    the last four years.                                      10:32:12
25         Q    So if you could point me out which of those     10:32:12
```

Page 89

| | | |
|---|---|---|
| 1 | cases that you just referenced where you were the | 10:32:16 |
| 2 | person who designed the conjoint analysis survey? | 10:32:19 |
| 3 | A    So page six of the exhibit, Toya Edwards | 10:32:23 |
| 4 | versus Walmart. | 10:32:33 |
| 5 | As it happens, the next entry Montgomery | 10:32:38 |
| 6 | versus Stanley Black & Decker dba Craftsman. | 10:32:42 |
| 7 | Page eleven, Dashnaw versus New Balance. | 10:32:58 |
| 8 | Sorry, the prior page, Toby Schechner versus | 10:33:15 |
| 9 | Whirlpool. | 10:33:25 |
| 10 | Q    Sorry, page ten? | 10:33:26 |
| 11 | A    Yeah.  I'm trying to think of the others | 10:33:27 |
| 12 | that I mentioned to you.  I think -- I just gave you | 10:33:31 |
| 13 | four examples, plus there's the instant matter, so I | 10:33:34 |
| 14 | think that's it. | 10:33:38 |
| 15 | Q    I'm trying to find the -- on page ten what | 10:33:39 |
| 16 | is the name of the case? | 10:33:41 |
| 17 | A    It's the third caption from the bottom. | 10:33:42 |
| 18 | Q    Oh, Schechner versus Whirlpool? | 10:33:45 |
| 19 | A    Yes. | 10:33:49 |
| 20 | Q    Any other cases that you can recall as you | 10:33:50 |
| 21 | sit here today, where you were the one to design the | 10:33:56 |
| 22 | consult -- conjoint survey? | 10:34:02 |
| 23 | A    Again, there are numerous cases in which I | 10:34:06 |
| 24 | participated in the design.  But if you are going to | 10:34:10 |
| 25 | say where I was the primary author of the survey, | 10:34:12 |

Page 90

| | | |
|---|---|---|
| 1 | those are the ones that I can think of -- think of as | 10:34:13 |
| 2 | I sit here right now. | 10:34:15 |
| 3 | Q    Are you will aware in any of those cases | 10:34:17 |
| 4 | whether a court excluded your testimony based on the | 10:34:27 |
| 5 | analysis that you did -- the conjoint analysis that | 10:34:33 |
| 6 | you did? | 10:34:36 |
| 7 | A    I don't think I have an awareness of that | 10:34:38 |
| 8 | one way or the other. | 10:34:41 |
| 9 | Q    Are you aware whether or not a court in any | 10:34:42 |
| 10 | of those cases rejected your conjoint analysis and | 10:34:44 |
| 11 | did not certify the class in those cases -- any of | 10:34:49 |
| 12 | those cases? | 10:34:53 |
| 13 | A    In the Dashnaw matter, I know that the | 10:34:54 |
| 14 | parties resolved the case.  I don't think there was | 10:35:00 |
| 15 | ever any judicial commentary on the work. | 10:35:03 |
| 16 | The Craftsman and Walmart case are still | 10:35:07 |
| 17 | pending. | 10:35:11 |
| 18 | And the Schechner case, I know the judge | 10:35:12 |
| 19 | took issue with the conjoint analysis in that case. | 10:35:15 |
| 20 | But I don't know the present status of the case. | 10:35:17 |
| 21 | Q    What do you know about the Schechner case, | 10:35:20 |
| 22 | in terms of what the judge took issue about? | 10:35:23 |
| 23 | A    My primary recollection is that the judge | 10:35:26 |
| 24 | concluded that I had used arbitrary price points in | 10:35:30 |
| 25 | the survey rather than actual real world market base | 10:35:32 |

Page 91

1   price points.                                          10:35:36

2       Q    So, in effect, that you did not incorporate   10:35:37

3   supply side considerations in your analysis?           10:35:51

4       A    By virtue of having used arbitrary prices,    10:35:53

5   that would be my recollection of how the judge could   10:35:58

6   characterize the work.                                 10:36:00

7       Q    Okay.  So going back -- we'll get to that     10:36:02

8   in a bit.                                              10:36:05

9            But going back to your work in the last       10:36:06

10  four years, can you describe for me -- you've          10:36:10

11  described for me the situations where you were the     10:36:16

12  person who was primarily responsible for designing     10:36:20

13  the conjoint survey.                                   10:36:24

14           I want to ask you a broader question.  I      10:36:29

15  want to know which of these cases that are on your CV  10:36:32

16  involved work by you that involved conjoint analysis   10:36:35

17  in any degree.                                         10:36:42

18           So maybe if we can start at the first page    10:36:44

19  of your -- the cases which is page three and just      10:36:47

20  kind of rattle them off for me, if you would?          10:36:50

21      A    Sure.  So Prescod versus Celsius involved     10:36:53

22  conjoint.  The same, Willis versus Colgate.  Bechtel   10:36:59

23  versus SOLE Fitness.  Bailey versus Rite Aid.          10:37:08

24  Cardenas versus Toyota.  Milan versus CLIF.  Chamlin   10:37:17

25  versus J&J.                                            10:37:27

| | | |
|---|---|---|
| 1 | what you would be testifying to? | 11:50:20 |
| 2 | A   You mean on that initial call that we've | 11:50:23 |
| 3 | been talking about? | 11:50:25 |
| 4 | Q   Yes. | 11:50:26 |
| 5 | A   My best memory of that call would have | 11:50:27 |
| 6 | been, hey, Colin, there's a case I would like to talk | 11:50:30 |
| 7 | to you about with the team.  Can we schedule some | 11:50:34 |
| 8 | time in the coming week. | 11:50:36 |
| 9 | Something along those lines. | 11:50:37 |
| 10 | Q   Did Mr. Fisher advise you have any of | 11:50:38 |
| 11 | factual assumptions or other assumptions that -- | 11:50:43 |
| 12 | strike that. | 11:50:52 |
| 13 | Did you learn anything about the case in | 11:50:53 |
| 14 | that first call? | 11:50:55 |
| 15 | A   I think he would have told me the name of | 11:50:56 |
| 16 | the defendant so that I can could a conflict check | 11:51:00 |
| 17 | and probably provided me with a copy of the complaint | 11:51:03 |
| 18 | to look at so that I could be up-to-speed when we | 11:51:06 |
| 19 | jumped on the first call. | 11:51:10 |
| 20 | Q   And when you had -- when you jumped on a | 11:51:11 |
| 21 | call with your first call -- when you jumped on your | 11:51:14 |
| 22 | first call with the team -- I think you called them | 11:51:18 |
| 23 | the team -- were you already engaged by that point or | 11:51:20 |
| 24 | was that before you were engaged? | 11:51:25 |
| 25 | A   Again, I don't have the engagement in front | 11:51:28 |

Page 130

| | | |
|---|---|---|
| 1 | of me, but I would assume that I was engaged at that | 11:51:31 |
| 2 | point. | 11:51:35 |
| 3 | Q   So, is it your recollection that you were | 11:51:45 |
| 4 | effectively engaged after the first conversation you | 11:51:47 |
| 5 | had with Mr. Fisher to work on the matter? | 11:51:50 |
| 6 | A   I would say effectively.  I don't remember | 11:51:54 |
| 7 | the exact timeline. | 11:51:56 |
| 8 | Q   Had you worked with Mr. Fisher in the past? | 11:52:00 |
| 9 | A   Yes. | 11:52:02 |
| 10 | Q   On how many occasions? | 11:52:03 |
| 11 | A   Mr. Fisher, maybe ten times. | 11:52:05 |
| 12 | Q   What about Mr. Fisher's firm? | 11:52:10 |
| 13 | A   More than that.  Probably twenty-ish times. | 11:52:13 |
| 14 | Q   So, if you look at your schedule of cases | 11:52:18 |
| 15 | that you gave testimony in the last four years, it | 11:52:22 |
| 16 | adds up to about 26 times. | 11:52:28 |
| 17 | Does that refresh your recollection as to | 11:52:30 |
| 18 | how many times you may have been engaged in the | 11:52:33 |
| 19 | past -- | 11:52:38 |
| 20 | A   I apologize, I didn't mean to speak over | 11:52:38 |
| 21 | you. | 11:52:42 |
| 22 | I think I said twenty-ish times, so I think | 11:52:43 |
| 23 | that was in the ballpark. | 11:52:47 |
| 24 | Q   What was the -- are you currently working | 11:52:49 |
| 25 | with Mr. Fisher's firm on any other matters? | 11:52:51 |

Page 131

```
 1   call.                                              11:58:42

 2        Q   And you believe that that call occurred   11:58:48

 3   within a week or so of the 12-23-2019 time entry?  11:58:50

 4        A   Which call are we talking about?  You keep 11:58:55

 5   referring to calls but without sort of identifying 11:58:58

 6   what they are.                                     11:59:01

 7        Q   Yeah, I apologize.  The team call that you 11:59:02

 8   just testified to.                                 11:59:05

 9        A   That would have been -- well, as billed it 11:59:06

10   would have occurred during the week of 12-23.  So I 11:59:09

11   don't remember the precise date, but it would have 11:59:14

12   occurred in that time frame.                       11:59:16

13        Q   And prior to that call were you given any  11:59:18

14   documents to review?                               11:59:21

15        A   I can't state with certainty.  It's       11:59:22

16   possible that Mr. Fisher would have sent me the    11:59:25

17   complaint, but prior to the engagement I don't think 11:59:27

18   any other case documents would have been shared with 11:59:30

19   me.                                                11:59:33

20        Q   I'm going back to your report and I know   11:59:33

21   that you prepared a lot of different reports.      11:59:50

22            Would it be accurate to say that many of  11:59:54

23   your reports follow the same general format?       11:59:58

24        A   We do have a particular style of          12:00:01

25   declaration in terms of the cover page and our logo 12:00:05
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q    What is your understanding of plaintiffs' | 12:02:55 |
| 2 | liability -- excuse me plaintiffs' theory of | 12:02:58 |
| 3 | liability in this case? | 12:03:02 |
| 4 | A    At the highest level -- and I would | 12:03:02 |
| 5 | certainly let plaintiffs' own papers speak for | 12:03:04 |
| 6 | themselves, they allege that people bought | 12:03:07 |
| 7 | Fisher-Price Rock 'N Play sleepers, they paid a | 12:03:10 |
| 8 | retail price for those and that the products are, in | 12:03:17 |
| 9 | fact, valueless or basically in the alternative that | 12:03:18 |
| 10 | they were worth substantially less than the market | 12:03:22 |
| 11 | value of those products at the time of purchase. | 12:03:26 |
| 12 | Q    It's -- in preparing a damages analysis, | 12:03:29 |
| 13 | it's very important for you, as the expert, to | 12:03:33 |
| 14 | understand what plaintiffs' theory of liability is. | 12:03:35 |
| 15 | Would you agree with that? | 12:03:39 |
| 16 | A    The level of importance has certainly | 12:03:40 |
| 17 | changed over time.  But I would presently say, yes, | 12:03:42 |
| 18 | one of the first thing I do is ask a client to | 12:03:46 |
| 19 | present to me or give me a complaint or something | 12:03:49 |
| 20 | else that elucidates the theory of liability, so I | 12:03:51 |
| 21 | can think about that. | 12:03:56 |
| 22 | Q    And the theory of liability that you just | 12:03:57 |
| 23 | articulated, where did you get that information from? | 12:04:01 |
| 24 | A    Probably a combination of the complaint and | 12:04:05 |
| 25 | my discussions with counsel. | 12:04:09 |

Page 140

| | | |
|---|---|---|
| 1 | Q    What is your understanding of why the | 12:04:16 |
| 2 | product is valueless? | 12:04:18 |
| 3 | A    That there is a risk of infant mortality | 12:04:20 |
| 4 | and other injury from the use of the product. | 12:04:23 |
| 5 | Q    What use of the product creates risk of | 12:04:27 |
| 6 | mortality according to plaintiffs' theory in the | 12:04:38 |
| 7 | case? | 12:04:42 |
| 8 | A    If are you talking about what the | 12:04:43 |
| 9 | plaintiffs allege, I believe that there is no safe | 12:04:48 |
| 10 | use that they would support for this particular | 12:04:50 |
| 11 | product. | 12:04:53 |
| 12 | Q    So is it your understanding that | 12:04:53 |
| 13 | plaintiffs' theory of liability in this case is that | 12:04:56 |
| 14 | the product is unsafe for all uses? | 12:04:58 |
| 15 | A    Yes. | 12:05:00 |
| 16 | Q    And your understanding of that is based on | 12:05:00 |
| 17 | your conversations with counsel in reading the | 12:05:09 |
| 18 | complaint? | 12:05:11 |
| 19 | A    Correct. | 12:05:12 |
| 20 | Q    Have you reviewed any other documents to | 12:05:12 |
| 21 | articulate your understanding of what you believe | 12:05:14 |
| 22 | plaintiffs' theory of the case is? | 12:05:18 |
| 23 | A    Not that I recall. | 12:05:20 |
| 24 | Q    You are not here today -- you are not here | 12:05:23 |
| 25 | today to opine as to whether or not plaintiffs' | 12:05:34 |

Page 141

```
 1        A    Not particularly one way or the other.      13:02:06
 2        Q    Did you review any of the deposition        13:02:08
 3   transcripts of Fisher-Price employees?                13:02:10
 4        A    Not that I recall.                           13:02:14
 5        Q    Do you know whether any Fisher-Price         13:02:16
 6   employees have been deposed?                           13:02:20
 7        A    I think I was aware just from chitchat with  13:02:24
 8   counsel that there were 30(b)(6) witnesses being       13:02:30
 9   deposed.                                               13:02:34
10        Q    Was any of the substance of the -- of any    13:02:34
11   of the depositions ever disclosed -- strike that.      13:02:38
12             Was any of the substance of any of the       13:02:40
13   testimony of any of the Fisher-Price witnesses ever    13:02:43
14   disclosed to you?                                      13:02:44
15        A    I think I heard that what I had assumed       13:02:45
16   about some underlying data from Fisher-Price and the   13:02:52
17   sales of the products that my understanding of it was  13:02:54
18   confirmed by one of those witnesses.                   13:02:57
19        Q    Can you elaborate on that?  What data are    13:03:01
20   you referring to?                                      13:03:03
21        A    I don't remember the precise Bates number,   13:03:05
22   but one of the Fisher-Price documents has a pretty     13:03:08
23   detailed outline of the ongoing sales of the          13:03:11
24   products.  And again, I had a pretty good feeling      13:03:16
25   about what it was that the 30(b)(6) witness to the     13:03:19
```

Page 179

```
 1    best of my recollection had confirmed my          13:03:24

 2    understanding of the data.                        13:03:26

 3         Q    And in terms of the ongoing sales of the  13:03:26

 4    product what are you referring to?                13:03:30

 5         A    Sales by time and by SKU of the challenged  13:03:31

 6    products.                                         13:03:36

 7         Q    Other than the sales information which you  13:03:39

 8    just testified to, were you provided any information  13:03:42

 9    regarding any testimony given by any Fisher-Price  13:03:48

10    employee?                                         13:03:52

11         A    Would you ask the question again, please, I  13:03:52

12    just missed part of it?                           13:03:54

13         Q    Sure.                                    13:03:57

14              Other than the sales information which you  13:03:58

15    just testified, were you given any information    13:04:00

16    regarding the substance of any testimony given by any  13:04:02

17    Fisher-Price employee?                            13:04:06

18         A    Not to the best of my recollection.      13:04:06

19         Q    Prior to preparing your report, have you  13:04:08

20    reviewed any consumer reviews on the product?     13:04:17

21         A    Again, not to the best of my recollection.  13:04:21

22         Q    Prior to preparing your report, did you  13:04:25

23    review any blog posts regarding the product?      13:04:27

24         A    I don't think so, no.                    13:04:32

25         Q    Is there any other material you think would  13:04:33
```

Page 180

1   have been helpful for you in preparing the report        13:04:36

2   that you did not receive?                                 13:04:40

3        A   I guess I don't know what's out there but I      13:04:41

4   was very comfortable making the opinions that I have      13:04:48

5   made and set forth in the report based upon the           13:04:51

6   present record.  Obviously, as I stated in the report     13:04:54

7   if there any new or additional information comes to        13:04:56

8   light I will happily consider it.                          13:05:00

9        Q   Did you review plaintiff's motion for class       13:05:03

10  certification prior to it being filed?                     13:05:06

11       A   I don't think so, no.                             13:05:08

12       Q   Have you read it before today?                    13:05:09

13       A   I'm not even sure I've read it today.             13:05:12

14  Well, I know I haven't read it today.  I'm not even        13:05:14

15  sure I have read it as of today.                           13:05:19

16       Q   Yeah, that actually was my question.  Sorry       13:05:20

17  if it faded out.  But my question was initially prior      13:05:23

18  to the filing of plaintiff's motion for class              13:05:26

19  certification did you review it?                           13:05:32

20       A   Again that one I answered.  I don't believe       13:05:34

21  so, no.                                                    13:05:36

22       Q   And as of today have you reviewed                 13:05:36

23  plaintiff's motion for class certification?                13:05:39

24       A   Not to my recollection.                           13:05:42

25       Q   Were you provided any assumptions by              13:05:44

Veritext Legal Solutions
866 299-5127

```
1    BY MR. KANNY:
2        Q    We'll get more into that in a second.        13:17:02
3             Would you agree that the full refund theory    13:17:04
4    is only appropriate if the product has no value to    13:17:06
5    all of the class members?                            13:17:09
6        A    I'm not sure I would phrase it that way.     13:17:13
7    First of all, I would say one incidence in which I   13:17:16
8    understand that the full refund method would be      13:17:19
9    appropriate would be when that product has no market 13:17:24
10   value.  So again, I'm not looking at the subjective  13:17:27
11   feelings of class members but rather at the objective 13:17:30
12   market value of the product.                         13:17:34
13            I believe -- I'm not a lawyer but I have     13:17:35
14   been told that there are other circumstances where   13:17:38
15   the law could present the opportunity for a full     13:17:40
16   refund, but again, I'm not looking at any individual 13:17:45
17   consumer's subjective feelings about the product.    13:17:48
18       Q    Please define the objective market value as 13:17:51
19   you just stated.                                     13:17:57
20       A    That's typically equated with the market    13:17:57
21   price.                                               13:18:02
22       Q    And what is the market price based upon?    13:18:02
23       A    It depends on the product.  It depends on   13:18:06
24   the market.                                          13:18:10
25       Q    Would you agree that a market price is the  13:18:10
```

Page 190

1    intersection between the demand curve and the supply    13:18:16

2    curve?    13:18:23

3        A    It's generally not.    There are only the    13:18:23

4    rarest of circumstances where the price is pushed to    13:18:26

5    that "X" marks the spot interaction of supply and    13:18:29

6    demand.    13:18:32

7        Q    When -- in what circumstances is it pushed    13:18:35

8    to that point?    13:18:38

9        A    I'm aware only of the circumstance of    13:18:39

10    perfect competition, which exists only in economic    13:18:43

11    textbooks and to my knowledge never in the real    13:18:48

12    world.    13:18:53

13        Q    Have you seen any evidence to support the    13:19:00

14    conclusion that the Rock 'N Play sleeper was    13:19:03

15    valueless to all class members ?    13:19:12

16        A    Again, I haven't been asked to make a    13:19:14

17    determination about whether there was or was not    13:19:16

18    market value.  So when I say I haven't seen evidence    13:19:19

19    about that it's not there there's an absence of    13:19:22

20    evidence per se, just that I haven't sought out such    13:19:26

21    evidence because it was beyond the scope of my    13:19:29

22    report.    13:19:32

23        Q    Can you look at paragraph nine for me, the    13:19:32

24    first sentence.  And for record, I'll read it.    13:19:36

25        This is of your report and it says,    13:19:38

| | | |
|---|---|---|
| 1 | could never be eliminated -- eliminated? | 13:27:53 |
| 2 | MR. FISHER:  Object to form. | 13:27:59 |
| 3 | THE WITNESS:  Again, it's my understanding | 13:28:02 |
| 4 | that plaintiff's allege that the risks are inherent | 13:28:04 |
| 5 | in the product.  I don't know whether they are saying | 13:28:08 |
| 6 | that you could ameliorate those risks, for example, | 13:28:11 |
| 7 | by rebuilding or reconstructing the Rock 'N Play. | 13:28:15 |
| 8 | BY MR. KANNY: | 13:28:18 |
| 9 | Q   Are you planning on doing any analysis to | 13:28:23 |
| 10 | determine if the Rock 'N Play is valueless to all | 13:28:27 |
| 11 | class members? | 13:28:32 |
| 12 | A   I have not been asked to assist in that | 13:28:34 |
| 13 | task.  If I was asked to do it I would at least | 13:28:37 |
| 14 | consider taking the assignment but at this point I | 13:28:40 |
| 15 | have no plans to do that type of analysis, the sort | 13:28:45 |
| 16 | of liability work if you were. | 13:28:48 |
| 17 | Q   Do you know whether any of the babies of | 13:28:50 |
| 18 | the class -- putative class members have actually | 13:28:53 |
| 19 | been injured in using the Rock 'N Play sleeper? | 13:28:57 |
| 20 | A   I know that injury and death has certainly | 13:29:00 |
| 21 | been tied to use of the Rock 'N Play.  Whether any of | 13:29:08 |
| 22 | them are named plaintiffs, I don't know.  I think by | 13:29:11 |
| 23 | virtue of the class definition at least some of them | 13:29:14 |
| 24 | would be part of the class. | 13:29:18 |
| 25 | Q   Under your full refund theory if a consumer | 13:29:20 |

Page 199

| | | |
|---|---|---|
| 1 | of a Rock 'N Play sleeper sold at Walmart is | 13:51:51 |
| 2 | comparable to the price of a Rock 'N Play sleeper at | 13:51:54 |
| 3 | Best -- buybuy BABY, are you? | 13:51:58 |
| 4 | A   It would depend.  They may be comparable, | 13:51:59 |
| 5 | they may not be.  But since we're looking in the | 13:52:03 |
| 6 | aggregate we can make that estimation that will allow | 13:52:06 |
| 7 | for the differences in retailers to exist. | 13:52:09 |
| 8 | Q   So if buybuy BABY was selling a Rock 'N | 13:52:11 |
| 9 | Play sleeper for $150 and Walmart was selling a Rock | 13:52:17 |
| 10 | 'N Play sleeper for $29 your methodology would be a | 13:52:23 |
| 11 | simple average of the two? | 13:52:27 |
| 12 | A   My methodology would be to try and | 13:52:29 |
| 13 | determine the total amount that consumers spend on | 13:52:33 |
| 14 | the products, which would reflect the price that was | 13:52:37 |
| 15 | paid at buybuy BABY and the price that was paid at | 13:52:39 |
| 16 | Walmart. | 13:52:44 |
| 17 | Q   And well under your full refund theory what | 13:52:44 |
| 18 | would the putative class member be entitled to? | 13:52:49 |
| 19 | A   I can't speak to what any one person would | 13:52:51 |
| 20 | be entitled to.  What I can say is that under the | |
| 21 | full refund method the total amount spent at retail | 13:52:55 |
| 22 | subject to the class definition would be what would | 13:52:55 |
| 23 | be the aggregate class-wide damages. | 13:52:57 |
| 24 | Q   Right.  But as you sit here today, you have | 13:53:01 |
| 25 | no methodology in mind for how one would compensate | 13:53:04 |

Page 218

```
 1   individual putative class members?                13:53:11

 2        A    Because the individual compensation of   13:53:13

 3   putative class members doesn't impact the aggregate  13:53:16

 4   calculation of harm caused by the defendant and   13:53:20

 5   because I haven't been asked to figure out a claims  13:53:22

 6   administration regime I have not laid forth such a  13:53:25

 7   method.                                            13:53:29

 8        Q    Okay.  So if I look in your report I    13:53:29

 9   wouldn't find any methodology?                     13:53:32

10        A    Same answer.                             13:53:38

11        Q    Does your -- for the full refund theory 13:53:39

12   does your methodology take into account past refunds?  13:53:51

13        A    I'm sorry, say that one more time, please.  13:53:58

14        Q    Sure.                                    13:54:00

15             Does your full refund calculation take into  13:54:01

16   account past refund calculation taking into account  13:54:08

17   past refunds?                                      13:54:11

18        A    Yes, we would be looking to determine the  13:54:11

19   aggregate net sales to the class.                  13:54:12

20        Q    And in the data that you have do you have  13:54:13

21   the information that would allow you to take out from  13:54:15

22   that past refunds?                                 13:54:18

23        A    I believe I do have net sales statistics.  13:54:20

24        Q    What about discounts provided on the    13:54:26

25   purchase of the products?                          13:54:37
```

Page 219

```
 1    consumers.                                      15:28:11
 2        Q    When will you make a decision as to which  15:28:11
 3    attributes you will, in fact, use?             15:28:27
 4        A    Barring further evidence these are the  15:28:28
 5    attributes that will be used.  I do describe that  15:28:31
 6    there is a process by which the survey vetted through  15:28:34
 7    cognitive interviews and exploratory research.  And I  15:28:38
 8    understand that discovery in this case has been  15:28:41
 9    bifurcated and is ongoing.                     15:28:45
10            So I would always suggest to the court that  
11    I want to get this right and if information comes to  
12    light that would suggest a change in the survey, I  
13    would do that but if the judge said this all looks  15:28:52
14    good, let's go tomorrow I would use these attributes.  15:28:55
15        Q    Have you done any pre -- have you done any  15:28:59
16    exploratory research today?                    15:29:04
17        A    No, I have not but as I have said in the  15:29:08
18    appendix I would guaranty that that would be part of  15:29:12
19    my process of taking this survey to the field.  15:29:15
20        Q    And so as you said while you would use  15:29:17
21    these attributes those are based on what you know now  15:29:21
22    and not what you've done in connection with  15:29:24
23    exploratory research that as I think you say here,  15:29:29
24    would inform you as to what product attributes to  15:29:32
25    include in the survey; correct?               15:29:35
```

                                          Page 275

```
 1       A    When I have experience of doing careful      15:29:38

 2   conjoint design whether by myself or with other folk,  15:29:42

 3   it is often the case that a carefully designed         15:29:47

 4   conjoint as I have set forth here will experience few  15:29:50

 5   or no changes as a result of the exploratory research  15:29:54

 6   that confirms the careful research that was done       15:29:56

 7   before.                                                15:30:00

 8            But if there is something that sticks out     15:30:01

 9   from the exploratory research that would suggest that  15:30:02

10   it be prudent to make a change then I would, of        15:30:05

11   course.  Follow that prudence.                         15:30:09

12       Q    You do say though in paragraph 16 that as a   15:30:10

13   result of these interviews, quote, "I would gain a     15:30:14

14   better understanding of the drivers of consumer        15:30:17

15   choices"; correct?                                     15:30:20

16       A    I guess it would be more accurate to say      15:30:21

17   that either I would learn something or my prior        15:30:23

18   knowledge would be confirmed.                          15:30:26

19       Q    Just curious, have you in the course of       15:30:28

20   your work to date spoken with any user of the Rock 'N  15:30:42

21   Play sleeper?                                          15:30:46

22       A    Not knowingly and/or not about the Rock 'N    15:30:46

23   Play.                                                  15:30:48

24       Q    Have you spoken with any of the plaintiffs    15:30:48

25   in this case?                                          15:30:51

                                                    Page 276
```

1    A    Again, not knowingly.                        15:30:51

2    Q    Have you spoken with -- strike that.         15:30:55

3         Do you have kids?                            15:31:04

4    A    Yes.                                         15:31:04

5    Q    How old are your kid?                        15:31:05

6    A    I have one son who's almost five.            15:31:07

7    Q    Are you a user of a Rock 'N Play sleeper?    15:31:10

8    A    No, never have been.                         15:31:13

9    Q    Excuse me, that would be hard for you to be  15:31:15

10   a user of it.                                     15:31:19

11        Was your son ever -- did you ever purchase   15:31:20

12   or use a Rock 'N Play sleeper for your son?       15:31:22

13   A    No.                                          15:31:24

14   Q    Did you have any knowledge of -- of the      15:31:25

15   Rock 'N Play Rock 'N Play sleeper product prior to 15:31:31

16   this case?                                        15:31:34

17   A    I don't believe so, no.                      15:31:34

18   Q    Have you talked to your wife about the Rock  15:31:35

19   'N Play sleeper?                                  15:31:41

20   A    Only at the highest level when I described   15:31:41

21   what the case was about when she asked what I was 15:31:45

22   being deposed about last night.                  15:31:49

23   Q    And has she ever heard of the Rock 'N Play   15:31:51

24   sleeper product?                                  15:31:56

25   A    I didn't ask but she didn't indicate that    15:31:56

                                        Page 277

```
 1    the bottom, which is again standard procedure in      15:51:49
 2    conjoint.                                             15:51:52
 3        Q   And you'd agree with me wouldn't you that    15:51:52
 4    the safety warning here that you're using should be  15:51:54
 5    consistent with the plaintiff's theory of liability; 15:51:57
 6    correct?                                              15:52:03
 7        A   I agree that it should be and based on my    15:52:03
 8    discussions with plaintiffs it would be but again I  15:52:05
 9    would assure the court that if they believe there's  15:52:09
10    alternate language that would be more appropriate to 15:52:12
11    test that I can make a change to the design before   15:52:16
12    the survey is fielded.                               15:52:18
13        Q   Are you aware of any other products used     15:52:19
14    for infant sleep -- well, strike that.               15:52:22
15            Does your full refund theory assume that     15:52:49
16    purchasers of the Rock 'N Play sleeper had no        15:52:54
17    awareness of any alleged safety issues relating to   15:52:59
18    the product at the time they purchased it?           15:53:05
19        A   I'm not making an assumption about that one  15:53:07
20    way or the other.                                    15:53:12
21        Q   Is that important for your analysis under    15:53:13
22    the full damages model?                              15:53:16
23        A   Not based on plaintiff's stated theory of   15:53:19
24    liability.                                            15:53:21
25        Q   Do you know what the actual warning label    15:53:21
```

# ETI ECONOMICS AND TECHNOLOGY, INC.

COLIN B. WEIR
VICE PRESIDENT

ONE WASHINGTON MALL, 7TH FLOOR
BOSTON, MASSACHUSETTS 02118
Telephone (617) 598-2226
Mobile (617) 598-2225
Email: cweir@econtech.com

April 8, 2021

Lynda L. Fenn
c/o Demet Basar, Esq.
Beasly Allen Law Firm
218 Commerce Street
Montgomery, AL 36104

*In re: Fisher Price Rock 'N Play Sleeper Marketing; March 11, 2021 Deposition of Colin B. Weir*

Ms. Fenn:

Attached, please find the errata sheet to my March 11, 2021 deposition transcript.

Kind regards,

Colin B. Weir

April 8, 2021
Page 2 of 4

| Cite | Original | Errata | Reason Code |
|---|---|---|---|
| 8:25 | meet | make | 1 |
| 12:2 | loss | lost | 1 |
| 12:10 | , two | II | 1 |
| 13:6 | tries | trials | 1 |
| 13:9 | , one | I | 1 |
| 13:10 | two | II | 1 |
| 13:13 | two | II | 1 |
| 13:24 | one | I | 1 |
| 31:7 | guaranty | guarantee | 1 |
| 34:21 | suit | suite | 1 |
| 39:4 | 1999 | 2009 | 1 |
| 42:15-16 | schoolwork that's involved in | school worth its salt is | 1 |
| 48:4 | advance | advanced | 1 |
| 48:13 | If the | The | 1 |
| 50:9 | when | what | 1 |
| 50:15 | ads | paths | 1 |
| 51:11 | at levels | and levels | 1 |
| 52:12 | design | designed | 1 |
| 52:21 | base | Bayes | 1 |
| 53:7 | phrase | phase | 1 |
| 56:19 | advance classes | advanced class | 1 |
| 59:7 | taking break | taking a break | 1 |
| 63:1 | aught | aughts | 1 |
| 72:23 | aught | aughts | 1 |
| 73:2 | here, "As of 3-9-2021, for | here as of 3-9-2021, "For | 1 |
| 78:11-12 | are you | you are | 1 |
| 84:18 | guess | guessed | 1 |
| 85:6 | Yes | No | 1 |
| 91:25 | base | based | 1 |
| 94:22 | once | ones | 1 |
| 100:7 | John | Jon | 1 |
| 100:12 | McMarrow | McMorrow | 1 |
| 102:20 | did | do | 1 |
| 103:4 | Betty | Betsy | 1 |
| 104:6 | Byron | Behrend | 1 |
| 114:11 | affixed | a fixed | 1 |
| 114: 12 | base | based | 1 |
| 114:14 | arbitrarily | arbitrary | 1 |
| 116:2 | primary | primarily | 1 |
| 118:11 | that used | that was used | 1 |

April 8, 2021
Page 3 of 4

| 121:19 | 17 | 13 | 1 |
|---|---|---|---|
| 130:16 | could a | could run a | 1 |
| 146:4 | generalizations | generalization | 1 |
| 147:17 | refer | defer | 1 |
| 156:14 | can' | can't | 1 |
| 159:14 | 20201 | 2021 | 1 |
| 164:3 | I'll | I'm | 1 |
| 165:14 | challenge | challenged | 1 |
| 168:23 | "What | "When | 1 |
| 171:25 | report in | report and | 1 |
| 173:5 | in | and | 1 |
| 175:6 | that their primarily | that as their primary | 1 |
| 179:25 | that | but | 1 |
| 181:7 | there any | there is any | 1 |
| 189:2 | their | there are | 1 |
| 194:11 | first | for | 1 |
| 194:21 | "haven't | "shoudn't have | 1 |
| 194:22 | be | lead | 1 |
| 198:3 | sold in | sold, were in | 1 |
| 202:8 | expanse | extant | 1 |
| 206:18 | faceted | facile | 1 |
| 217:5 | as memory-wise | as a memory quiz | 1 |
| 218:13 | spend | spent | 1 |
| 221:24 | class by | class-wide | 1 |
| 224:13 | Eubanks | Eubank | 1 |
| 224:17 | 340 | 349 | 1 |
| 230:19 | speak or | speak for | 1 |
| 233:3 | ongoing | conjoint | 1 |
| 241:2 | marketplace I | market price I | 1 |
| 242:8 | withdraws | draws | 1 |
| 242:9 | work to | worth | 1 |
| 245:5 | are on conjoint analysis | run conjoint analyses | 1 |
| 245:5 | having | have | 1 |
| 246:9 | bases | basis | 1 |
| 257:7 | continued | contingent | 1 |
| 260:6 | was | would | 1 |
| 261:15 | Byron | Behrend | 1 |
| 268:1 | conduct | conduct would | 1 |
| 272:15 | inti | into | 1 |
| 275:6 | survey vetted | survey is vetted | 1 |
| 275:18 | guaranty | guarantee | 1 |
| 295:3 | know see | see | 1 |

April 8, 2021
Page 4 of 4

| 298:20 | conjoin | conjoint | 1 |
|---|---|---|---|
| 298:22 | review that a | view that as | 1 |
| 303:5 | CDW | CBW | 1 |

1= Transcription error, 2=Clarification, 3=Conform to Facts